2008-1533 Fernandez Innovative Technologies v. General Motors Ms. Spandowski Good morning. May it please the Court. The District Court erred against drawing the terms messages and network signal in the 899 patent by importing specific limitations from the specification and also by Specifically, the District Court limited both the terms messages from Claim 1 and the term network signal in Claim 7 to embodiments that are marketing, commercial, and promotional only. And this is despite there are at least 25 examples in the specification, starting at the bottom of Column 5 and going into Column 6, that actually talk about embodiments that are decidedly not commercial, marketing, or commercial. Now, by importing this limitation that the messages One of those is the OnStar method of communicating with automobiles, which appeared in 1996 on the market and your patents filed in 1998. I understand validity is not before us, but that would certainly give you a lot of problems, wouldn't it? Well, Your Honor, the actual accused functionality that we've accused in this case is not that initial OnStar functionality from back in 1996. The functionality that we've accused is all functionality You've accused of vehicle diagnostic, but I think that Judge Rader's getting to the heart of the point. I mean, have you heard the motto, Be careful what you wish for? Because you're asking for an incredibly expansive claim construction, which seems to me you're going to have a lot of trouble surviving validity challenges based on the vehicle response, emergency response system of OnStar, which appears to be admittedly prior art. So while that is not the legal question before us, I think I, for one, am querying why you're reaching so broadly for a claim construction that will likely invalidate your own patent at the end of the day. See, she can do that better than I can. Well, I believe that in the specification of the patent, it sets forth that the term messages isn't limited to commercial, promotional, and marketing embodiments. There are examples in the summary of the invention, which refers to online messages. Throughout the entire patent, it talks about targeted messages. Now, one of the big points of novelty in this patent that came up during the prosecution history is this actual classification that occurs over at the server, which is based on these client attributes that are detected by the sensors. So based on these client attributes, there's classification going on. And based on that classification, a message is sent. And we would contend that that functionality wasn't there in the initial version of OnStar back in 1996, 1997. But the message that you would be sending was whether or not you needed a tire shop to replace your blown-out tire or otherwise. Isn't that really a message, a content message of an ad type? Is that what you're aiming for? Well, we aren't arguing that this patent excludes commercial, promotional, and marketing messages. We think it absolutely does. We think that's... It's not the second line of the patent. The claim says commercial. Well, it does. However, if you look at the background of the invention, the inventor actually explained what he meant by online commerce, which is the marketing and distribution of goods and services. Now, we would argue that the district court's construction of messages actually ignores the distribution of goods and services aspect of that explanation. And also... Are you acknowledging that the preamble is, in fact, a limitation in this claim? We are. That actually never came up at the district court level. It was only in this appeal that... And in the district court's opinion that... Actually, let me back up. The district court relied partially on that online commerce statement in Claim 1. The argument was never made between us and the police about whether or not the preamble was limiting. We don't consider it to be limiting. But even if it is limiting for Claim 1, even if this court decides that it is, the patentee specifically explained what they meant by that online commerce, which is marketing and distribution of goods and services. But the abstract says, direct marketing to a client group. Why don't we just hold you to what you said? Well, the abstract of the invention also talks about targeted messaging for enhanced services. It talks about targeted online transactions. Yes, and then when you get to the patient embodiment that you were mentioning earlier in the medical area, you're still talking about ascertaining client attributes so that you can send targeted message to a client group. It's all pretty consistent with that general heading of direct marketing, isn't it? Well, but we're saying that targeted messages don't have to be commercial, marketing, or promotional. There could be, for example, there could be a message sent to the car for a recall campaign. I wouldn't consider getting a message saying that, you know, a bolt on my door needs to be replaced because the part's been recalled as a commercial, promotional, or marketing message. Also in the patient embodiment, it talks about monitoring patient vital signs. If a patient's vital signs are being monitored, and maybe because of their heart rate or their blood pressure, they get classified into a set that says, oh, you need to call your doctor, and it sends a message to them. I wouldn't consider that commercial, promotional, or marketing. What if you add the doctor's name? I'm sorry? What if you add the doctor's name to the message? Is that a promotional marketing tool? Well, I wouldn't think so because I would think that the doctor, they would already know who their doctor is if they're actually getting this actual, this communication from their doctor. I would think it would be set up by their doctor. But certainly there could be a situation where a patient could get an ad for some kind of a prescription or something like that. And again, we aren't denying that this patent covers marketing, commercial, and promotional embodiments. We're simply saying that it's not limited to that. Let me ask you something about the stipulation of non-infringement. At page 13 of your brief, you indicated that the district court's construction of messages and network signals would make a difference as to whether or not you could prove infringement. What about associated client definition? Are you saying that that's not necessary? We are saying that's not necessary. We believe the district court's construction of associated client wasn't correct, but there's a very subtle difference between the district court's interpretation of associated client with respect to the acute products and with our proposed construction. It doesn't make any difference how we would interpret associated client? Yes, and that's our position in our stipulation of non-infringement. The order on non-infringement all laid out the messages that the stipulation of non-infringement was based on messages and was based on the network signal construction. So would that mean that you'd be asking us to give you an advisory opinion on an associated client if it doesn't impact infringement? I suppose it would be. I suppose it would be. We simply don't agree with the district court's construction. I understand you don't agree, but does the definition of associated client make any difference as to infringement? I'm sorry, how does it? Yes. Well, it makes a difference because in determining what you consider the actual client to be, as it's described in the invention, so there's a client that's described, and there's also an associate client that's described. It's our position that the associated client is actually a sort of client within a client, and it's actually a microprocessor or controller that's within the official client, which is defined as 10, 20, and 30 in the specification. And I can explain that a little better if I point you. But that doesn't impact infringement. Is that what you're telling us? Yes. Yeah, we've determined that. We don't believe it's going to impact infringement. So as far as the determination of associated client, you don't want us to do that because then basically it would be an advisory opinion. That's correct. That's correct. Now, turning to the network signal construction, in this construction, the district court actually replaced the word network signal in Claim 7 with the word messages. And how this came about with network signal is the parties were actually construing the full phrase, the interface receiving first network signal according to classified set. So both parties came up with a construction of this entire phrase in Claim 7, and the appellees replaced the word network signal in there with messages, whereas we just left the word network signal. We thought that would be a term understood in its plain and ordinary meaning. We didn't really think we needed to come up with a synonym for network signal. Obviously, because the patentee used a different word in Claims 1 through 6, he used messages, and in Claims 7 through 18, he used network signal, which seems to indicate that there's a difference between a message and a network signal. And from our viewpoint, that difference is that a network signal is much narrower than a message. In the actual patent itself, which is where our construction of messages comes from, at Column 9, Lines 21 to 23, it describes a signal as a type of message. And so we don't believe that a network signal, as it's used in Claim 7, is as broad as a message. And we also, to the extent that this Court would rely on the reference to online commerce in Claim 1, Claim 7 doesn't have any mention of online commerce in its preamble. So for at least those two reasons, network signal should have a different construction than messages. Now we're into your rebuttal time. You raised the critical points I gathered. Let's hear from the other side. Okay, thank you. Mr. Nivelle. Thank you, Your Honor. Good morning. May it please the Court. It's interesting to hear counsel say that they don't want this Court to construe the term associated client. I believe that's because they've realized now that their position is untenable and that the District Court's judgment can and should be affirmed in light of its construction of associated client. We went to great lengths to try to get counsel for Fernandez to adopt it. When you say the District Court's judgment can be affirmed, they stipulated non-infringement. The District Court in this case didn't actually make a finding or determination. This is appealed to us on the basis of a stipulation. If they didn't stipulate with regard to associated client, how could we possibly use that? Because they've said in their brief twice and in other communications that are part of the record that the judgment of non-infringement, that all three terms underlie that judgment of non-infringement. I read all of the records you're talking about. I assume you mean the e-mail communication back and forth. The stipulation itself never highlights the word associated client as being the basis. And since that is the actual document which forms the basis of your ability to come up on us, to appeal on us, I don't see how an e-mail back and forth between the two of you about what associated client may or may not be included in the appeal itself is necessary. I view this as, look, she thinks she should be able to appeal messages and network. And if she wins on either of those, then it goes back. She's willing to stipulate. She also thinks associated client was wrongly decided. Now, they believe they can work with that definition and still prove infringement. But, hey, while she's here, maybe they're willing to go ahead and address it anyway to prevent future problems with the District Court and the likely necessity of another appeal should she win on messages. And so I guess what she's saying to us seems to be consistent with that theory. And she seems to have backed off and said, well, if you think it would be an advisory opinion, you don't have to address it. We can get around it. So what are you telling us we should do about that? Well, in their brief, they specifically say the stipulation and judgment, that all three terms underlie that stipulation and judgment, that the stipulation and judgment were based on all three terms. And that's on page 12 and 5 of their opening brief. They're changing their mind. Hold on. I'm on page 13 of their opening brief. And it seems quite clear that they say the stipulation was based on, number one, messages, and, number two, network signals. Then a separate sentence. Fernandez believes the District Court's construction of associate client is incorrect and convoluted. And it goes on, Fernandez submits that reversal of either messages or network signals will allow Fernandez to prove infringement. They don't say they need us to reverse on associated client for them to prove infringement. It's fair enough. And I think they're trying to have it both ways here because they don't want to admit that they were seeking an advisory opinion. I doubt that they admitted at oral argument that they were seeking an advisory opinion. They did not need us to determine the associated client. That's correct. Then my question is why did they put that in their brief to begin with and force us to brief that issue? I think the issue has been briefed. It's before the Court. The Court doesn't need to address that issue. But if it doesn't impact infringement one way or the other, then this Court need not at least determine what it means because it's already been determined below and there's an admission that it doesn't impact infringement. I agree that this Court need not address it. The Court can address it. Mr. Lebel, can you go to Claim 7 and the network signal? Doesn't that refer to the maintenance or status of a network, not a message that's carried over the network? The message is carried over the network because it's a network signal. It's a network signal, but usually when I think of a network signal popping up on my computer, it's telling me about something happening to the network, not a message carried over it. As a matter of fact, if we look at the Column 8 reference that we were talking about earlier, it talks about a targeted messaging or commercial offerings. Doesn't the or suggest that a message is something different than a commercial offering? I don't think so, no. The message can either be a commercial message or it could be something else. It could be a transaction. The claim at issue Claim 1, and I guess with Claim 7 you're focused on the network signal. I'm having trouble with both. I understand the reason. The reason why I think there's trouble here is because plaintiffs, Fernandez, have taken the position that the term network signal is narrower than messages. I think the record is clear and I think the specification fully supports the District Court's construction of messages to be commercial marketing of a promotional nature. Then the issue becomes what does network signal mean? Is it narrower in the same scope or broader than message? The District Court found them to have the same scope. The network signal, in light of the entire specification, including the abstract and the background of the invention, that tied and focused the patent as a whole and the invention on commercial, the District Court decided that the network signal, which is being sent from the server back to the client interface in Claim 7, that's the message back from the server to the client. So the signal refers to a network. That means it isn't a commercial message, right? No, Your Honor. The network part of the term network signal is saying that it's coming over the network to the client. And that's supported by the claim language itself that says the interface, which is the client interface, is receiving first network signal, according to the classified set.  that are not coming over the network, and those are the digital feedback and control signals that are internal to the client that deal with the sensor. The network signal is coming over the network from the server to the client. And if messages must be a commercial message, and if Fernandez says the network signal is a subset of message, then it necessarily follows that the network signal, which Fernandez says is narrower than messages, if messages must be commercial, the network signal must also be commercial. So how is that a targeted commercial message? Well, I agree that it's strange. I agree it's strange, too. And the issue the district court faced was is it the same scope or is it narrower, as Fernandez continued. The district court was not resentful of any position that the term network signal was broader than messages. And Fernandez admitted it and said under any construction of the term messages, not just the district court's construction, but under any construction of the term messages, the term network signal on claim 7 must necessarily be more narrow than a message. And they said that in their brief. You're essentially saying claim 1 and claim 7 are just method and system claims for the same invention. Yes. And so you've got to keep them the same dimension. But the language is different. We usually construe language, not general principles of whether an invention is described identically. That's true. But in this case, the summary of the invention, the background of the invention, and the abstract, and the specification as a whole, consistently define that communication that comes from the server back to the client as being commercial, marketing, or promotional in nature. There are lots of signals and communications described in the specification. But the claimed signal at issue here with respect to both messages and network signal is the signal that comes from the server to the client. And every example of that communication in the specification is a commercial marketing or commercial message. And as the court pointed out, and this panel... Well, the examples are, but doesn't the patent applicant offer an explicit definition for messages that would be broader than those examples? The patent does offer a specific definition of messages, but it is not broader than those examples. Both parties point to the same passage in the specification as the definition of the messages, and that is at column 9 on lines 21 through 23. And that phrase is, a targeted message, which may include commercial, promotional, or marketing, symbol, audio, text, still image, video, or other media content, or signal. So that phrase has three adjectives that describe the content of the message. The message may be... Well, those three adjectives, the patent applicant argues, describe the content of the symbol, not the content of the message. That's what I understand their argument to be. And literally and grammatically, that seems to be proper. I don't think so. I think the grammar literally should be read as, it's commercial, promotional, or marketing, and then it can be a symbol, audio, text. So you'd like to put a comma after the word marketing where it doesn't currently appear. Right, because if they were... Right, so you'd like me to change the specification in order to have it grammatically read to the limitations you would like to impart. We're not British judges. Well, the grammar of the specification is not good throughout the specification. So I think it's unfair. But the only place we're worried about is right here. And just because someone's a bad speller doesn't mean they spelled it bad every time. And right here, there's nothing grammatically improper. And in fact, the construction that a patent applicant is arguing for seems to grammatically follow the sentence. And you want me to either stick in a comma or stick in the words in the form of, or taking the form of. The construction you asked for forces me to modify what they wrote. The construction they asked for is exactly what they wrote. So how do I handle that? Well, I would submit that you cannot adopt the language as it exists in the specification because that would not be performing the role of plain construction. That would be punting the issue to the jury as to how to interpret this. Haven't we said that patentees can be their own lexicographers? Yes, they can. But this is not a clear, understandable explanation that a jury is going to be able to take back with them and decide the issue. Which of these words is the jury not going to be able to understand? I don't think the jury would understand what terms are modifying which other terms. But if marketing symbol is in fact without the comma but marketing symbol, how significantly does this affect your stipulation of non-infringement? I don't think it would affect it. I think it's a fair reading of words, especially in the other statements in the specification that limit the invention as a whole to commercial, promotional, or marketing. The statement from the first sentence in the patent in the abstract, the passage in the background in the invention makes clear that it's for enabling direct marketing. But more importantly... But are these clear enough to constitute a disavowal? Because that's where it seems like you need to go. If we accept that they acted as their own lexicographer and we give them the exact definition they wrote, then to overcome that you have to show the rest of the spec they effectively disavowed that meaning. Yes, and I think they did. And one example is on the bottom of column 7 in the paragraph that spans the bottom of column 7 and the top of column 8, where this isn't a preferred embodiment. So it's different. But they did say here, in the description of the preferred embodiment, according to an important aspect of present invention. So they're not just saying this is the particular embodiment. This is an important aspect of the present invention, generally where an Internet-based client interface and associate database effectively provide group analysis processing to monitor client-server web traffic and deliver direct marketing services to the client group. And particularly in the scope of Claim 1, Claim 1 is a method for directed online commerce. The message's limitation is directing one or more messages, wherein the directed one or more message is provided by the server to the client. The message has to be what is accomplishing the directed online commerce in the scope of Claim 1. That's the only message that's getting directed and could be the source of the online commerce, consistent with the abstract background of the invention and the important aspect of the invention. It's much more clear, I admit, in Claim 1, that the claim should be limited to commercial marketing and promotional. And you think that clarity comes from the preamble where it says online commerce? I think that clarity is added by virtue of the preamble, yes. But below, you didn't argue that the preamble should be construed as a limitation. And I'm sure you're aware of our precedent that says as a general rule, preambles are not, in fact, limitations. I am aware of that, Your Honor. We did construe part of the preamble. And parties agreed and submitted an agreed construction to the online portion of the online commerce. To me, that was sufficient to indicate to our position in the court that the preamble was limited. Yes, we did not construe the entirety of the preamble, and we did not have the court expressly find that the entirety of the preamble is limited. But the parties both, we did brief, and we ended up agreeing on a construction for the term online within the preamble. And in that sense, I think we did communicate to the district court, and it is our position, that the preamble is limited. So you say both parties agreed that the online limitation in the preamble constitutes a limitation for the claims? Well, both parties submitted it for construction, and there's no reason to do that unless it is, indeed, a limitation. But doesn't that really run afoul of our requirement that we do not import limitations from the written description into the claims? Isn't that what we're doing here? No, Your Honor. Instead, what we're doing is exactly what Phillips said we should do. The specification is the best indication for the proper construction of the claims. The exact quote from Phillips is, the specification necessarily reforms. If the claims are unclear, what if the claims are clear? If the claims are unclear, the term messages, though, is defined and explained in the specification, so that the term messages can only be properly understood within the context of the claim. Neither side argued that messages should be given its plain and ordinary meaning. Fernandez did not say that messages should be construed to have its plain and ordinary meaning, so therefore we don't really need to look at the specification. Both parties looked at the specification to construe the term messages as it was used in the specification. The parties differ with respect to how it's used in the specification, but the fact that we need to get to the specification is a point on which the parties agree. But whether or not the message is limited to commercial content, isn't that really a limitation that's employed into the claim from the specification? No. The justification for interpreting the directed message within the scope of the directed online commerce in Claim 1 is enlightened by the specification, but it's not as if the term messages, directed messages, and directed online commerce don't exist in the claim, and we're simply importing limitations into the claim without any basis for doing so. We're construing the term messages to have the meaning that the patentees gave that term during the drafting of their patent specification. In other words, what we're doing, we're following Phillips. The correct instruction is the one that most naturally aligns with the patent's description of the invention. And here, the invention as a whole, including the abstract and the background and the passage I read a moment ago, say that the invention is for a directed market. Claim 1 itself says it's directed online commerce, and the only message that's getting sent back to the client in Claim 1 is this directed message. That must be the source by which the claim accomplishes the method of online commerce. I think we're out of time. Are there any more questions for Mr. Lido? Thank you. Thank you. Ms. Fandosky. Thank you. I just want to hit a couple of points based on Mr. Lovell's argument. He's argued that with the construction of messages, that they're proposing the meaning that the patentees gave the word message. Obviously, as Judge Moore pointed out, this isn't the case. The definition that the patentees actually gave the word messages is what our actual proposed construction is, which is the language that comes straight from the specification. Now, when importing these extra words that the district court imported, this in the nature of, in the form of, you end up with kind of a strange sentence because now you have something that's in the form of media content. And I'm not really sure what that means. It just doesn't seem to flow well with the sentence. The sentence as written is a little strange as well. It's kind of as though you said, and this shall be blue, green, red, and all colors. What's the point of saying blue, green, and red if all colors are options? And here you say commercial, promotioning, marketing symbol, audio, text, still image. I mean, what isn't included ultimately in this list if we construe it the way you want us to construe it? Well, I think basically any kind of targeted message is included. I think the patentee here gave a list of the examples of the types of messages they could think of. But we don't run into an issue of just having this broad, unfettered term because of the actual claim language itself, which dictates that a message is only sent based on this classification based on a client attribute. But why would you need to say commercial, promotional, or marketing symbol? Does that mean other symbols that are not commercial, promotional, or marketing are excluded, but then say any audio, text, still image, video, or other media content? It's a really strange way to draft what you're asking for. I would agree that the wording is a little clumsy, but I don't think that the commercial, promotional, or marketing that's at the beginning of that was meant to modify every single thing in the sentence or to limit the definition of the term messages to only a commercial, promotional, and marketing symbol. Throughout the patent, you see references to targeted online messages, directed transactions, directing or targeting online messages. But they all seem to be of a commercial, promotional, or marketing nature. There are certainly no examples, it doesn't appear, given in the spec, no concrete examples of a message that's conveyed that isn't a promotional, commercial message. You're saying there could be messages sent, but nothing in the spec actually gives examples of that. I disagree with that. I think if you look at column 8, lines 24 and 25, it talks about clients being designated as candidate sites for possible vehicle or product defect, repair, upgrade, or recall. Certainly, repair and upgrade, I can see situations where those might be a promotional, commercial, or marketing message. But for product defect, for recall, those don't scream out commercial, promotional, or marketing to me. I think that's an example of a situation where the message that would be sent to those designated clients wouldn't be commercial, promotional, or marketing. You're saying it could be non-commercial, but sure it could be commercial. Mercedes has recalled the carburetor on your car stopped by your local Mercedes dealership to have that part replaced. That would seem to me to be a commercial message. You're saying it could, that there are examples that could possibly not be commercial, but the spec doesn't actually give any concrete examples that aren't. It seems to me what you said could easily be construed the way I just explained it, too. I would disagree. I don't consider getting a recall notice to be a commercial type of message or promotional or marketing. I would view that as a service from my car company. Hey, there's something wrong with this car you bought. You need to bring it in, and we're going to fix it for you. I don't view that personally. I gave this a lot of thought. Is that a type of commercial message? I don't feel like that is. They're not trying to sell me something. They're trying to tell me there's something wrong with your car here. Bring it in. Fix it. It could be something serious. It could be something not so serious. But I wouldn't view that as a commercial, promotional, or marketing. And also, just one final point to make. Both the appellees and the judge and the district court completely ignored the summary of the invention. In that section, there's absolutely no reference at all to direct marketing, to commercial, promotional, or marketing messages. The summary of the invention refers to the messages much more broadly. It's just online messages, targeted online messages, and directed transactions. So despite what that said in the abstract and the various other parts, the summary doesn't refer to direct marketing at all. Okay. Thank you. Thank you both. The case is taken under submission.